## Kephart's Exr. *v.* Zeek et al., Appellants.

*Attorney and client—Authority—Judgment—Payment.*

Where the attorney for a judgment debtor contracts in writing with the plaintiff as to the application of funds to be derived from private sale of defendant's land, such agreement showing no authority to said attorney to receive the money on behalf of plaintiff, the fact that plaintiff knows that the attorney is to receive the proceeds of sale does not make the latter plaintiff's attorney, or operate as a ratification of the acts of the attorney, it being evident that plaintiff has dealt with him at arms length and as attorney for defendant.

Argued April 21, 1892. Appeal, No. 362, Jan T., 1862, by defendants, E. A. Zeek et al., from judgment of C. P. Huntingdon Co., Sept. T., 1886, No. 144, on verdict for plaintiff, R. Meyers, executor of J. R. Kephart, deceased. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Sci. fa. to revive judgment.

On the trial, before FURST, P. J., the evidence was to the following effect: Height held a judgment for $800 against Zeek

which was a first lien; the next lien was held by another party, and J. R. Kephart held a subsequent judgment for $500. Height began proceedings to collect his judgment, when Zeek called on M. S. Lytle as his counsel, who advised that some one be procured to buy the judgment and prevent a forced sale. Kephart agreed to buy the judgment, which with accrued interest amounted to $836. The following paper, entitled "Height v. Zeek et al.," was signed by Lytle:

"I acknowledge to have received from Jacob R. Kephart the sum of $836 which is placed in my hands for the purpose of purchasing and obtaining an assignment to him of the above stated judgment; and should I buy and procure an assignment of the same for less than the said sum of $836, then the excess over and above what I may pay therefor is to be retained by me and applied to my fees for making said purchase and afterwards collecting said judgment from the defendant."

On the back was this indorsement: "And it is further understood and agreed that I am to proceed to procure a sale of the real estate of E. A. Zeek, one of the defendants in said judgment, an assignee's or a sheriff's sale, at or before the next September term of court so that the amount of said judgment may be then realized by said Kephart."

After the execution was stayed Zeek sold the property to Buck for $1,750, Lytle preparing the deed and receiving the purchase money. Lytle and Kephart on June 18, 1887, signed the following agreement, entitled "Kephart v. Zeek, et. al., No. 144, Sept. T., 1886:"

"Debt $500, interest from August 5th, 1886, to March 14th, 1887, $18.33, less commissions at ten per cent as agreed upon, $51.83, leaving a balance of $456.50, costs $1.60.

"It is agreed at settlement this 18th day of June, 1887, that the amount due the above named plaintiff out of the money for which the property of E. A. Zeek, the defendant, was sold is $824, which is to be applied first to the above stated judgment, and the balance, $304.07, to the judgment of George B. Height, against E. A. Zeek et al., No. 113 Feb. T., 1885, now owned by said Kephart; that a new note is to be obtained if possible by Milton S. Lytle from the defendants in the latter judgment by the first of August next, at which time payment is to be made of the above stated sum as above distributed,

both judgments to be satisfied and the new note entered of record, and should said defendants refuse to give a new note, then $519.93 of said judgment, No. 113, Feb. T., 1885, is to remain unsatisfied against them."

Buck sold to Mingle et. al., and Myers, executor of Kephart, issued sci. fa. against defendants and terre tenants to revive the $500 judgment.

Defendants' points were as follows:

"1. If the jury believe that at the time of the delivery of the deed from E. A. Zeek to Isaac Buck for two lots of ground in the borough of Birmingham, upon which said judgment, No. 144, Sept. T., 1886, was a lien, M. S. Lytle, Esq., was the attorney for the said J. R. Kephart, with authority to receive the money due on said judgment, the verdict of the jury must be for the defendants, terre tenants. *Answer:* This would be true if the facts would warrant it; but, as the facts do not sustain the proposition, we decline to affirm the point." [3]

"2. If the jury find from the evidence that J. R. Kephart consented to the sale of the property of E. A. Zeek to Isaac Buck for the sum of $1,750 and knew in April, 1887, that the property had been purchased by said Buck and that the money due him on the judgment in suit had been paid by said Buck to M. S. Lytle, Esq., for him, and that said Kephart permitted Mr. Lytle to use the money under an agreement to pay interest for its use, the plaintiff cannot recover; and their verdict must be for the defendants, terre tenants. *Answer:* This point is predicated upon the fact that Kephart, in one of his answers in his deposition, said that Lytle said he would pay interest. We say that the facts fail to sustain this proposition of law, and it is refused." [4]

"3. When a loss must fall upon one of two innocent persons, the one who has been the most negligent must bear it; and if the jury find from the evidence that J. R. Kephart knew in April, 1887, that Isaac Buck had purchased the property and paid the money due him on the judgment in suit to M. S. Lytle and that he permitted the money to remain in M. S. Lytle's hands for a period of about two years without having given any notice to said Buck or in any way disavowing the act of M. S. Lytle in receiving the money for him, he was guilty of such negligence as will prevent the plaintiff from recovering

in this case; and their verdict must be for the defendants, the terre tenants. *Answer:* If Mr. Kephart had authorized Mr. Lytle to receive this money as attorney for him, or if he was affected with knowledge that Lytle, representing himself as his attorney, had received this money and thereby caused a loss to Buck, we say to you that he would have to sustain the loss himself; but the evidence in this case does not support that finding of facts, and the point therefore is inapplicable and is refused." [5]

" 4. Under all the evidence in the case the verdict of the jury must be for the defendants, the terre tenants. *Answer:* We decline to affirm this point, but say to you, under all the evidence in the case the verdict must be for the plaintiff." [6]

Verdict for plaintiff, $707.55; judgment. Defendants appealed.

*Errors assigned* were (1) directing jury to find for plaintiff; (2) not submitting case to jury; (3–6) instructions, quoting them as above.

*H. H. Waite,* for appellants.—The evidence and sufficiency of agency should have been left to the jury: Kohler v. R. R., 135 Pa. 346; Lamb v. Irwin, 69 Pa. 436. Money collected by attorney discharges defendant, even if it is not paid to the client: Sergeant v. Martin, 133 Pa. 132. As to agreement and ratification, see Rapalje & Lawrence's L. Dict. 41; Winton v. Little, 94 Pa. 64; Kelsey v. Bank, 69 Pa. 426; Evans, Principal and Agent, note, p. 52; Pittston Pass. R. v. Blackman, 6 Luz. Leg. Reg. 115; Porter v. Patterson, 15 Pa. 229; Mitchell v. Freedley, 10 Pa. 198; Pettebone v. Beardslee, 3 Kulp, 406.

*John M. Bailey,* for appellee, cited: Tams v. Hitner, 9 Pa. 441; Cake v. Olmstead, 1 Am. L. J. 169; Mason v. Wickersham, 4 W. & S. 100; Davis' Est., 5 Wh. 530; Bowers v. Still, 49 Pa. 65; Schollenberger v. Seldonridge, 49 Pa. 83; Murphy v. Eckel, 1 Walker, 144; League v. Waring, 85 Pa. 244; Hunter v. Moul, 98 Pa. 13; Kemmerer's Ap., 102 Pa. 558.

OPINION BY MR. JUSTICE HEYDRICK, October 3, 1892.

The single question in this cause is whether there was evidence of payment which ought to have been submitted to the jury. The terre tenants allege that the full amount of the

judgment sought to be revived was paid to and received by
Milton S. Lytle, Esq., a member of the Huntingdon county
bar, as attorney for the plaintiff. In support of their contention
they called Mr. Lytle, but he failed to testify that he had ever
been retained by Mr. Kephart to collect the judgment or in
any manner authorized to receive it. Two papers, however,
were produced, and identified by him which are claimed to be
evidence of such authority. The objection to the first of these
papers is that it is specific in its terms, and relates to another
and different judgment. It moreover appears in the testimony
of Lytle that at the time this paper was given by him to Kep-
hart he was attorney for Zeek, the defendant, and in that ca-
pacity and in the interest of his client approached Kephart and
solicited him to purchase the Height judgment. Under these
circumstances the paper given by him to Lytle, specific in its
terms, did not tend in the least to prove a general engagement
which should comprehend authority to receive satisfaction of
another judgment.

The next paper is entitled in the judgment now sought to
be revived and was signed by Lytle and Kephart. It is in
the following words :

"It is agreed at settlement this 18th day of June, 1887, that
the amount due the above named plaintiff, out of the money
for which the property of E. A. Zeek, the defendant, was sold,
is $824, which is to be applied, first, to the above stated judg-
ment, and the balance, $304.07, to the judgment of George B.
Height against E. A. Zeek et al., No. 113 February Term, 1885,
now owned by said Kephart ; that a new note is to be obtained
if possible by Milton S. Lytle from the defendants in the latter
judgment by the first of August next, at which time payment
is to be made of the above stated sum as above distributed,
both judgments to be satisfied and the new note entered of
record, and should said defendants refuse to give a new note,
then $519.93 of said judgment, No. 113 February Term, 1885,
is to remain unsatisfied against them."

This paper, while referring to the judgment now sought to
be revived, is equally barren of authority to receive payment,
or of anything like ratification of a previous receipt. It is in
form an agreement between Lytle and Kephart in which they
appear to be dealing with each other at arms length. but it is

impossible to read it in the light of the oral evidence without coming to the conclusion that Lytle was representing Zeek. He had not only been Zeek's attorney five months before when he procured Kephart to purchase the Height judgment and stay execution thereon, but subsequently, when Zeek sold the land bound by the judgment, he did the conveyancing, and Zeek, having executed the deed, sent it to him for delivery and he delivered it to the purchaser and received the purchase money. It was competent for Zeek to direct the application of any payment he might make upon the judgments against him, and his attorney might with propriety enter into an agreement in his behalf in respect to such application. But it would be a most singular proceeding for a judgment creditor to sit down with his own attorney and execute a formal agreement as to the application of payments, made or to be made by a debtor. And it would be equally unusual for attorney and client to stipulate between themselves, as Kephart and Lytle did, that upon payment of a judgment it should be satisfied. But it is needless to dwell longer upon this paper; for there is not only no express authorization to receive the money, or ratification of any act done by Lytle, but there is nothing from which a recognition that Lytle had assumed to receive the purchase money due Zeek from Buck in payment of the judgment can be inferred.

While the testimony of Lytle as well as the deposition of Kephart, taken by the terre tenants in his lifetime and read by them at the trial, shows that Kephart knew that the purchase money had been paid to Lytle and was to go to him, it is too clear to admit of question that he regarded Lytle as the attorney of Zeek in the receipt as well as the retention of the money, and so he undoubtedly was.

The judgment is affirmed.