His Honor, CHARLES P. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
This is a contest over the probate of a will.
*241 Widow James Wilder and Widow Sidney Livingston filed a petition in which they averred that they were the aunts of the deceased Jhlia E. Jacobs Kennedy, widow of Andrew S. Graham, who died intestate, and her nearest relatives and heirs, and they prayed to be recognized as snch and pnt in possession of all the property left by the deceased. Judgment was rendered in their tavor as prayed for.
A short time thereafter Grace Woelper filed a petition in which she averred that the deceased had left an olographic testament dated December 27th, 1890-, by which the deceased donated to her one diamond pin, and she prayed that said testament be probated and ordered executed, and that she be recognized as particular legatee of said pin and sent into possession of the same.
The will is in the following words:
“New Orleans, Dec. 27th, 1910.
“I, Julia Graham, do herewith bequeath to Miss Grace Woelper my diamond pin consisting of four diamonds in 9 gold sitting.
(Signed) “Julia Graham.”
Upon the declaration of two witnesses, Estelle G. Woelper, mother of the legatee, and O. B. Webb, the will was probated under Article C. C., 1655 (1648), by decree rendered September 7th, 1915.
Upon the next day, September 8th, 1915, the two aunts, who had bad themselves recognized as the heirs of the deceased, took a rule in which they averred that the pretended will produced by Grace Woelper is n'o-t dated and is not the genuine olographic will of the deceased, the same not having been entirely dated, written and signed *242 by her, and that the will produced is not dated in the year “1890” as erroneously stated in the. affidavit of the witnesses and the decree of September 7th, 1915, .and they prayed that the probate be set aside and the will be declared null and void.
Owing to the error in the date “1890” the rale was made absolute to the extent of vacating the order of probate with leave to the proponent of the will to make such additional proof for the probate of the'will .as she might desire, and for that purpose the case was continued tc September 29th.
Upon the trial of the case Mrs. Estelle G. Woelper, the mother of Grace Woelper, the legatee, testified that the deceased had written the will in her presence, on Decmber 27th, 1910, and signed it. She knows her handwriting for having received letters from her.
Grace Woelper, the legatee, was tendered as a witness. Objection was made to her on the ground that she was a legatee under the will and incompetent to prove it. The (objection was overruled and a bill reserved. She swore that the deceased wrote the will entirely in her presence and signed it, and gave it to her to keep until her death, iand that she had it ever since.
Two other witnesses testified that the will was entirely dated, written, and signed by the testatrix. It thus appears that five witnesses proved the will.
The Court rendered another decree dated October 14th, probating the will and ordering its execution. On the same day the Court rendered a formal decree dismissing the opposition of the two aunts to the probate of the will, and recognizing it as a genuine document and ordering the execution thereof, recognizing Grace Woelper as the legatee of the diamond pin and puttng her m possession thereof.
*243 Prom these two; judgments the two aunts have appealed.
The Article of the 'Civil Code, 1655, as amended by Act No. 119 of 1896, only requires that the will shall be “proved by the declaration of two credible persons who must attest that they recognize the testament as being entirely written, dated and signed, in the testator’s handwriting.” That portion of the Article formerly requiring the witnesses to have “often seen the testator write and sign during his life time” has been'repealed by Act 119 of 1896. The witnesses, under the amendment, may have acquired their knowledge of the testa.tor’s handwriting and signature, or of the fact that the will was written by the testator, from having seen ¡him write or sign his name, or from any other source satisfactory to the Judge. Certainly the testimony of two-witnesses that they saw the testator write the will is of the most convincing character. It is stronger than the mere declaration of two witnesses -that they recognize the will to be written by the testator, not because they saw him write it, but, by comparison, because of their general knowledge of the testator’s writing. In the first case, the witnesses cannot be mistaken; in the other, they give only their opinion and belief which may affirm what is not true in fact.
But in this case-the opponents of the will say that the testator cannot be a competent witness because she could not have been a subscribing witness to the making of an authentic will under Article C. C., 1592 (1585) C. N., 975.
We cannot fextend the arbitrary provisions of the ’Code beyond the strict letter of the law. Although the reasons for excluding an interested legatee from being a subscribing witness to the making of a notarial will would *244 apply with equal force to one tendered to probate an olographic will by which he was instituted a legatee, still where the law is silent we cannot legislate.
The law provides that the competent witness to any fact is a person of proper understanding. C. C., 2281 (2260). Interest has ceased to disqualify a witness. Act 71 of 1867, p. 143.
But we find the precise question decided in Succession of Morvant, 45 A., 207 (211) where the Court said:
“An interested beneficiary under a will (olographic) is a competent witness -as to the handwriting of the deceased, though he cannot be a subscribing’ witness. ’ ’
Also Succession of Hall, 28 A., 57 (59).
Fuentes vs. Gaines, 25 A., 106.
In the Succession of Eubanks, 9 A., 147 (149) a bill of exception had been taken to the rejection of the evidence of Mrs. Going and other women who were offered to prove the handwriting of an ‘olographic will. They had been rejected upon Article Civil Code 1591 (1584) which declares women incapable of being witnesses to testaments. The Court said:
“We differ from the District Court in the application of that article to the present case. We understand that article to mean, that women cannot be subscribing witnesses to those testaments which, by law, require witnesses — that they cannot be counted in the number- of subscribing witnesses requisite to give validity to a nuncupative or to 'a mystic will, land without which, by Article 1588, a will of either of these classes is a nullity. But the olographic will requires no subscribing witnesses. The proof necessary to establish it, according to an .article just cited, *245 (C. C. 1655 [1648]) is ‘the declaration, of two credible persons, who must attest that they recognize the testament as being entirely written, dated, and signed in the testator’s handwriting, as having often seen him write and sign during his lifetime.’ The words'used in this article ‘two credible witnesses,’ embrace all those who, by Articles 2260 and 2261 (now 2281-2282, C. C.) are competent and credible witnesses of any covenant or fact in civil matters. The construction which wp give to the Article 1584 is favored and confirmed by the phraseology of the French text ‘sont absolumenfl incapables d’etre temoins ‘dans’ les testaments.”
Opinion and decree, February 28th, 1916,
The principle was affirmed in Succession of Roth, 31 A., 315 (320).
We think that the evidence in this case to probate the will satisfies the exigencies of the law, especially as there was no testimony impeaching the genuineness of the will.
C. C., 1555 (1648); Succession of McDonogh, 18 A., 419; Succession of Gaines, 38 A., 123; Succession of Farrell, 1.31 La., 720; Succession of White, 131 La., 890.
The judgment is therefore affirmed.-